# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HARRY L. BECKETT,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:18-cv-329** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **U.M. GRANT,** *et al.*, | : | |
| **Defendants** | : | |

## MEMORANDUM

This matter is before the Court pursuant to the motion to dismiss (Doc. No. 36) filed by Defendants Dr. Dancha ("Dancha"), Dr. Mihaly ("Mihaly"), and Dr. Frommer ("Frommer") (collectively, "Medical Defendants") and the motion to dismiss (Doc. No. 38) filed by Defendants U.M. Grant ("Grant"), Counselor Wilson ("Wilson"), CHCA Kowalewski ("Kowalewski"), RN Schrock ("Schrock"), CO Bubb ("Bubb"), Joseph J. Silva ("Silva"), CO Savino ("Savino"), SCI Laurel Highlands, SCI Smithfield, SCI Huntingdon, Unit Manager B Block, B Block Counselor, Department of Corrections ("DOC") Office of Population Management, and DOC Bureau of Health Care Services (collectively, "DOC Defendants"), both seeking to dismiss the second amended complaint (Doc. No. 22) filed by *pro se* Plaintiff Harry L. Beckett ("Plaintiff"), who is presently incarcerated at the State Correctional Institution in Dallas, Pennsylvania ("SCI Dallas"). After receiving several extensions of time (Doc. Nos. 40-43, 46-51), Plaintiff filed his brief in opposition to the motions to dismiss (Doc. No. 52). Defendants have filed neither a

reply brief nor an extension of time to do so.  Accordingly, because the time to file a reply brief has expired, the motions to dismiss are ripe for disposition.[1]

## I.  BACKGROUND

Plaintiff initiated the above-captioned action on February 9, 2018 by filing his initial complaint, in which he explains that he suffers from neurological and musculoskeletal impairments as well as an organic brain syndrome.  (Doc. No. 1 at 6.)  In a Memorandum and Order dated March 23, 2018, the Court granted Plaintiff leave to proceed *in forma pauperis* and dismissed his complaint with leave to amend. (Doc. Nos. 8-9.)  After receiving two extensions of time (Doc. Nos. 11-14), Plaintiff filed his amended complaint on August 15, 2018 (Doc. No. 15).  In the amended complaint, Plaintiff explains that he suffers from pre-existing brain damage, chronic memory loss, headaches, dizziness, traumatic brain injury, PTSD, damage to his back, spine, neck, and left hand, arm, elbow, shoulder, and leg, RDS/CRPD, and mental health issues.  (*Id.* at 1.)  In a Memorandum and Order dated September 12, 2018, the Court dismissed the amended complaint and granted Plaintiff leave to file a second amended complaint.  (Doc. Nos. 17-18.)  After receiving an extension of

---

[1] On September 30, 2019, the Court received an extension of time to file any additional pleadings from Plaintiff.  (Doc. No. 53.)  The Court, however, has already received Plaintiff's brief in opposition to the motions to dismiss.  (Doc. No. 51.)  Accordingly, the Court will deny as moot Plaintiff's motion for an extension of time.

time (Doc. No. 20-21), Plaintiff filed his second amended complaint on December 18, 2018 (Doc. No. 22).

In his second amended complaint, Plaintiff alleges that Defendants violated his First and Eighth Amendment rights during his incarceration at SCI Laurel Highlands,[2] SCI Smithfield, and SCI Huntingdon. Specifically, he alleges that his transfers between facilities were retaliatory, and that Defendants caused him pain and suffering because he had to travel outside to access the law library and church at SCI Laurel Highlands. (Doc. No. 22 at 3, 5-6.) Plaintiff also maintains that Defendants denied him medical care, resulting him a loss of consciousness while he was at SCI Smithfield. (*Id.* at 5-6.) Plaintiff also argues that Defendants allowed him to be exposed to air conditioning, despite the fact that cold temperatures aggravate his conditions;[3] refused to reinstate his Z-code (single cell) status; and that

---

[2] Defendants Grant, Wilson, Kowalewski, Schrock, Dancha, and Mihaly were employed at SCI Laurel Highlands during the relevant time. (Doc. No. 22 at 2.) SCI Laurel Highlands is in Somerset County, Pennsylvania, within the Western District of Pennsylvania. *See* 28 U.S.C. § 118(c). Venue for any events occurring at SCI Laurel Highlands would therefore be proper in that district. *See* 28 U.S.C. §§ 1391(b)(2) & 1406(a). These Defendants, however, have not moved to transfer the claims against them to the United States District Court for the Western District of Pennsylvania and, pursuant to § 1391(b)(1), a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." Because it appears that all Defendants are residents of Pennsylvania, the Court declines to transfer Plaintiff's claims regarding events at SCI Laurel Highlands to the United States District Court for the Western District of Pennsylvania.

[3] Plaintiff acknowledges that he could wear and has access to a winter coat, knit cap, gloves, and sweat suit. (Doc. No. 22 at 4, 7.) He states that he could also go to the laundry room to have his winter clothing heated up in the dryer while temporarily wearing "exchanged winter gear for incoming patients." (*Id.* at 7.)

Defendants Dancha and Mihaly did not respond to the concerns he expressed during his telemedicine examination with the Department of Veterans' Affairs ("DVA"); did not order follow-up treatment at the Blair Medical Center, and "denied RSDSA [and] other communications."[4] (*Id.* at 2, 4.) As relief, Plaintiff seeks monetary damages in addition to the following: a space heater or Z-code status in a warm cell; a transfer to a cell at SCI Smithfield with "knob heat control and greenhouse [effect]"; off-site treatment; winter clothing; meals; medications; commissary; urine tests; no use of metal handcuffs; no transfer on a crowded and noisy bus; access to a gym and barber shop; and continued use of his current word processor. (*Id.* at 7.)

---

[4] While unclear, it appears that Plaintiff is asserting violations of the Americans with Disabilities Act ("ADA"), as well as the Health Insurance Portability and Accountability Act ("HIPAA"), in his brief opposing the motions to dismiss. (*See* Doc. No. 52.) However, "[a] plaintiff cannot bring new claims up in a brief in opposition." *Bucano v. Monroe Cty. Corr. Facility*, No. 3:13-CV-1782, 2014 WL 509396, at *6 n.4 (M.D. Pa. Jan. 7, 2014) (citing *Commonwealth of Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)), *Report and Recommendation adopted in part by* 2014 WL 516520 (M.D. Pa. Feb. 10, 2014).

    Even if Plaintiff's ADA and HIPAA claims were properly before the Court, they would be subject to dismissal. First, "HIPAA does not provide a private cause of action." *Newsuan v. Colon*, No. CIV.A. 13-1199, 2013 WL 3989076, at *2 (E.D. Pa. Aug. 5, 2013). Instead, "[t]he ability to bring an enforcement action to remedy HIPAA violations, and ensure that a healthcare provider is HIPAA compliant, lies within the exclusive province of the Secretary of Health and Human Services, not the hands of private citizens." *Polanco v. Omnicell, Inc.*, 988 F. Supp. 2d 451, 460 (D.N.J. 2013). Moreover, to state a claim under Title II of the ADA, Plaintiff must allege that "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." *Kokinda v. Pa. Dep't of Corr.*, No. 17-3166, 2019 WL 2576391, at *4 (3d Cir. June 24, 2019) (quoting *Haberle v. Troxell*, 885 F.3d 170, 178 (3d Cir. 2018)). Nothing in Plaintiff's opposition brief alleges that he was excluded from a DOC program or service because of his disability.

## II.    STANDARD OF REVIEW

### A.    Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Twombly* and *Iqbal*, pleading requirements have shifted to a "more heightened form of pleading." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. *Id.* The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the

following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (noting that when considering a motion to dismiss, courts may consider

"documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading").

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### B.     Civil Rights Statute, 42 U.S.C. § 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.*  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."

*See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III. DISCUSSION

### A. Claims Against SCI Laurel Highlands, SCI Smithfield, SCI Huntingdon, DOC Office of Population Management, and DOC Bureau of Health Care Services

Plaintiff has again named SCI Laurel Highlands, SCI Huntingdon, and SCI Smithfield as Defendants, and seeks to also proceed against the DOC Office of Population Management and the DOC Bureau of Health Care Services. The DOC Defendants assert that Plaintiff's claims against these entities should be dismissed because they are shielded by sovereign immunity. (Doc. No. 39 at 5-8.) As discussed below, the Court agrees.

The Court previously informed Plaintiff that SCI Laurel Highlands, SCI Smithfield, and SCI Huntingdon are not subject to suit under § 1983. *See Smith v. Samuels*, No. 3:12-cv-524, 2013 WL 5176742, at *4 (M.D. Pa. Sept. 12, 2013)

8

(noting that "[c]ourts have repeatedly recognized that a prison or correctional facility is not a person for purposes of civil rights liability"). Moreover, the three prisons, as well as the DOC's Bureau of Health Care Services and Office of Population Management, are not amenable to suit under § 1983 because they share in the Commonwealth of Pennsylvania's Eleventh Amendment immunity and are not persons under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) (noting that "[s]ection 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal form for litigants who seek a remedy against a State for alleged deprivations of civil liberties"); *Sloan v. Chambers*, No. 3:CV-12-1954, 2016 WL 4245550, at *13 (M.D. Pa. Aug. 11, 2016) (concluding that Eleventh Amendment immunity "applies to a 'subordinate agency' like the Bureau of Health Services and dismissal is appropriate under this theory"). Accordingly, the Court will grant the DOC Defendants' motion to dismiss with respect to Plaintiff's claims against SCI Laurel Highlands, SCI Smithfield, SCI Huntingdon, the DOC Office of Population Management, and the DOC Bureau of Health Care Services.

### B.    Claims Against Dr. Frommer

Plaintiff has also named Dr. Frommer, the medical director at SCI Smithfield, as a Defendant in this action. The Medical Defendants maintain that Plaintiff's

claims against Defendant Frommer must be dismissed because Plaintiff fails to plead his personal involvement in the alleged constitutional violations. (Doc. No. 37 at 17-20.)

For a § 1983 claim to survive a motion to dismiss, the plaintiff must sufficiently allege that the defendant was personally involved in the act or acts that the plaintiff claims violated his rights. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Solan v. Ranck*, 326 F. App'x 97, 100 (3d Cir. 2009). Therefore, supervisors cannot be liable under § 1983 on the traditional standard of *respondeat superior*. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010). Instead, there are two theories of supervisory liability that are applicable to § 1983 claims: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

In this matter, although Plaintiff names Defendant Frommer as a party, the

second amended complaint contains no allegations against him. As such, the second amended complaint fails to state a claim for relief against Defendant Frommer because it fails to identify how he engaged in any wrongdoing that violated Plaintiff's constitutional rights. Accordingly, the Court will grant the Medical Defendants' motion to dismiss with respect to Plaintiff's claims against Defendant Frommer. *See Robinson v. Wheary*, No. 1:16-cv-2222, 2017 WL 2152365, at *1-2 (M.D. Pa. May 17, 2017) (dismissing complaint where "the caption of the complaint names numerous individual defendants, [but] contains no well-pleaded factual averments relating to these specific defendants in the body of the complaint").

## C.    First Amendment Retaliation Claims

It appears from the second amended complaint that Plaintiff suggests that Defendants violated his rights under the First Amendment by retaliating against him by transferring him between facilities and by designating his medical devices to be used on an "as needed" basis. (Doc. No. 22 at 3-7.)

The First Amendment offers protection for a wide variety of expressive activities. *See* U.S. Const. amend I. These rights are lessened, but not extinguished in the prison context, where legitimate penological interests must be considered in assessing the constitutionality of official conduct. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). Retaliation for expressive activities can infringe upon an individual's

11

rights under the First Amendment. *See Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000). To state a retaliation claim under the First Amendment, a plaintiff bears the burden of satisfying three elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). Second, a plaintiff must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." *See id.* (quoting *Allah*, 229 F.3d at 225). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *See id.* (quoting *Suppon v. Dadonna*, 2013 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." *See id.* at 333-34 (quoting *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In the instant case, Plaintiff fails to adequately allege any facts suggesting that he was engaged in constitutionally protected conduct to support a retaliation claim against Defendants. Moreover, Plaintiff fails to assert any facts to causally connect Defendants' alleged actions to any protected activity. Thus, because Plaintiff has failed to state a plausible retaliation claim against any of the Defendants, the Court will dismiss such claims.

**D.     Eighth Amendment Claims**

The Eighth Amendment prohibits the infliction of cruel and unusual punishment on prisoners.  There are several types of Eighth Amendment claims, including claims alleging: denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement; and the use of excessive force by prison guards.  An Eighth Amendment claim includes both objective and subjective components.  *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Serious hardship to the prisoner is required to satisfy the Eighth Amendment's objective component. *See id.*  The subjective component is met if the person or persons causing the deprivation acted with "a sufficiently culpable state of mind."  *See id.*

**1.     Conditions of Confinement Claims**

To succeed on a claim as to one's conditions of confinement, a plaintiff must establish that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm."  *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2015).  "[T]he Constitution does not mandate comfortable prisons."  *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  Therefore, conditions of imprisonment violate the Eighth Amendment only if they, "alone or in combination . . . deprive inmates

13

of the minimal civilized measures of life's necessities." *See id.* at 347. Such necessities include "adequate food, clothing, shelter, and medical care." *See Farmer*, 511 U.S. at 832. Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Court addresses each deprivation alleged by Plaintiff in turn.

### a.  Air Conditioning

Plaintiff alleges that Defendants violated his Eighth Amendment rights by housing him in air-conditioned units without extra blankets. (Doc. No. 22 at 3.) "[I]t is well settled that exposing prisoners to extreme temperatures without adequate ventilation may violate the Eighth Amendment." *Walker v. Schult*, 717 F.3d 119, 126 (2d Cir. 2013). Moreover, "a low cell temperature at night combined with a failure to issue blankets" could state a claim under the Eighth Amendment. *See Wilson*, 501 U.S. at 304; *see also Chandler v. Baird*, 926 F.2d. 1057, 1065-66 (11th Cir. 1991) (noting that "the right of a prisoner not to be confined in a cell at so low a temperature as to cause severe discomfort and in conditions lacking basic sanitation" is well established under the Eighth Amendment).

In his opposition brief, Plaintiff suggests that all Defendants were "fully aware" that exposure to air conditioning posed a risk to his health because it caused his conditions to become worse. (Doc. No. 52 at 27.) Contrary to Plaintiff's

assertion, however, nothing in the Plaintiff's second amended complaint plausibly suggests that Defendants knew of such a risk and deliberately ignored that risk. Plaintiff admits that he was able to wear a winter coat, hat, gloves, and sweat suit as needed and that he was able to warm up his clothing using the dryers in the laundry room.  (Doc. No. 22 at 4-7.)  The Court cannot conclude from the second amended complaint, as pled, that Plaintiff's placement in air-conditioned units qualifies as cruel and unusual punishment in violation of the Eighth Amendment.  *See Pilkey v. Lappin*, No. 05-5314 (JBS), 2006 WL 1797756, at *13 (D.N.J. June 26, 2006) (dismissing inmate plaintiff's Eighth Amendment claim regarding excessive air conditioning because nothing in the complaint suggested that it caused the plaintiff any harm or that the plaintiff was "prevented from using his warm clothing or a blanket in order to make himself comfortable").  Accordingly, the Court will grant Defendants' motions to dismiss with respect to Plaintiff's claims concerning the air conditioning.

### b.    Exposure to Outside Conditions

Plaintiff next alleges that Defendants violated his Eighth Amendment rights because he was exposed to inclement weather on occasion.  (Doc. No. 22 at 4-7.) Specifically, Plaintiff maintains that while incarcerated at SCI Laurel Highlands, he

was forced to travel outside to go to the law library and church, both of which were "over four-4-football fields away." (*Id.* at 6.)

Once again, nothing in Plaintiff's second amended complaint alleges that Defendants knew of a risk posed to Plaintiff's health and deliberately ignored that risk. Plaintiff admits that he was able to wear a winter coat, hat, gloves, and sweat suit as needed and that he was able to warm up his clothing using the dryers in the laundry room. (Doc. No. 22 at 4-7.) The conditions of which Plaintiff complaints do not constitute a denial of the "minimal civilized measures of life's necessities." *Rhodes*, 452 U.S. at 347; *cf. Clayton v. Morgan*, No. 11-623, 2012 WL 1448332, at *3 (W.D. Pa. Feb. 16, 2012) (noting that "allowing prisoners out on yard during a winter day where ice may be present in the yard simply does not give rise to a substantial risk of serious harm or challenge common standards of decency" for purposes of the Eighth Amendment), *Report and Recommendation adopted*, 2012 WL 1454889 (W.D. Pa. Apr. 26, 2012). Accordingly, the Court will grant Defendants' motions to dismiss with respect to Plaintiff's claims concerning exposure to outside conditions.

### c. Z-Code Status

Plaintiff also suggests that Defendants violated his Eighth Amendment rights

when they did not reinstate his Z-Code (single cell) status.[5]  (Doc. No. 22 at 3-7.)  The "denial of Z-code status, by itself, is not cruel and unusual punishment and does not rise to the level of an Eighth Amendment violation."  *Mattis v. Dep't of Corr.*, No. 16-0306, 2017 WL 6406884, at *12 (W.D. Pa. Dec. 15, 2017) (citing *Gellock v. Prison Health Servs., Inc.*, No. 07-8, 2009 WL 2038235, at *8 (W.D. Pa. July 8, 2009)).  However, "double celling can amount to an Eighth Amendment violation if combined with other adverse conditions."  *Nami v. Fauver*, 82 F.3d 63, 67 (3d Cir. 1996).  Thus, to allege an Eighth Amendment violation based upon the revocation of Z-Code status, a plaintiff "must [allege] that prison officials had actual knowledge of 'an excessive risk to inmate health or safety' and 'disregarded' this risk."  *Myer v. Giroux*, No. 15-71, 2018 WL 6831147, at *6 (W.D. Pa. Dec. 28, 2018).

In his brief in opposition, Plaintiff suggests that his "historic DOC" Z-Code status proves that he has always been classified as that status.  (Doc. No. 52 at 22.)  It appears from this that Plaintiff believes Defendants deliberately refused to reinstate his Z-Code status in violation of his Eighth Amendment rights.  The second amended complaint, as pled, however, fails to allege any facts suggesting such.

---

[5] To the extent Plaintiff is alleging that the failure to reinstate his Z-Code status violated his due process rights under the Fourteenth Amendment, he cannot maintain such a claim.  *See Hodges v. Wilson*, 341 F. App'x 846, 849 (3d Cir. 2009); *Hughes v. Miskell*, No. 3:CV-10-1443, 2011 WL 7561387, at *12 (M.D. Pa. Jan. 10, 2011), *Report and Recommendation adopted*, 2012 WL 928428 (Mar. 19, 2012).

Nothing in the second amended complaint suggests that Defendants had any knowledge that failure to reinstate Plaintiff's Z-Code status would pose an excessive risk to his health or safety and that they disregarded this risk. Nothing in the second amended complaint plausibly suggests that Plaintiff's medical conditions were exacerbated by the lack of single-cell status. Thus, because Plaintiff has not stated a plausible Eighth Amendment claim based upon the revocation of his Z-Code status, the Court will grant Defendants' motions to dismiss with respect to this claim. *See Montanez v. Keller*, No. 3:CV-13-2564, 2015 WL 273199, at *5 (M.D. Pa. Jan. 20, 2015) (granting motion to dismiss because inmate plaintiff failed to allege facts suggesting that revocation of his Z-Code status posed an excessive risk to his health or safety); *George v. Pa. Dep't of Corr.*, No. 3:CV-09-1202, 2012 WL 936778, at * (M.D. Pa. Mar. 11, 2010) (dismissing Eighth Amendment claim regarding denial of Z-Code status pursuant to 28 U.S.C. § 1915 because nothing in the amended complaint suggested that inmate plaintiff "suffer[ed] from a serious medical or mental health need that require[d] he receive a Z-code status").

## 2. Medical Care Claims

To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to evidence deliberate indifference to a serious medical need.

*See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). The relevant inquiry is whether the defendant (1) was subjectively deliberately indifferent to (2) plaintiff's objectively serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994); *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842). The Third Circuit has found deliberate indifference when a prison official: (1) knows of a prisoner's need for medical treatment and intentionally refuses to provide it; (2) delays necessary medical treatment for a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment. *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Moreover, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors

or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.*

Because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. *White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990); *see Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); *see also Pearson v. Prison Health Servs.*, 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care."). If there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second-guess the medical judgment of the attending physician. *Caldwell v. Luzerne Cty. Corr. Facility Mgmt. Emp.*, 732 F. Supp. 2d 458, 472 (M.D. Pa. 2010) ("Courts will not second guess whether a particular course of treatment is adequate or proper."); *Little v. Lycoming Cty.*, 912 F. Supp. 809, 815 (M.D. Pa.), *aff'd*, 101 F.3d 691 (3d Cir. 1996). Therefore, a mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment that the inmate receives does not support a claim of deliberate

indifference. *Pearson*, 850 F.3d at 535; *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987). Moreover, a prison doctor's use of a different treatment regimen than that prescribed by a private physician does not necessarily amount to deliberate indifference. *Johnson v. Cash*, 557 F. App'x 102, 104 (3d Cir. 2013) (per curiam) (citing *McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977)). The question is thus "whether the defendant has provided the plaintiff with some type of treatment, despite whether it is what plaintiff wants." *Jacobs v. Lisiak*, Civ. No. 15-00686, 2016 WL 344431, at *4 (M.D. Pa. Jan. 28, 2016); *Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988).

In the second amended complaint, Plaintiff suggests that Defendants Dancha and Mihaly, as well as Defendant Schrock, violated his Eighth Amendment rights by denying his "expressed concerns" during a telemedicine examination with the DVA. He also alleges that Defendants Dancha and Mihaly failed to order follow-up treatment at the Blair Medical Center and failed to follow his Inmate Disability Accommodation Request. Plaintiff, however, fails to set forth facts regarding what concerns these Defendants allegedly disregarded, what treatment he believes he needed from the Blair Medical Center, and how they failed to follow his Inmate Disability Accommodation Request. Moreover, Plaintiff has not alleged facts setting forth how Defendants Dancha and Mihaly's failure to provide such treatment

or consider such concerns put him at serious risk of harm. *See, e.g.*, *Johnson*, 557 F. App'x at 103-04 (noting that a prison doctor's failure to follow a course of treatment recommended by the inmate plaintiff's private, outside medical provider did not establish deliberate indifference). Overall, Plaintiff's second amended complaint fails to plead any facts suggesting that these Defendants denied him medical treatment or demonstrated deliberate indifference to his medical needs while he was incarcerated at SCI Laurel Highlands. Moreover, Plaintiff's second amended complaint fails to plead any facts supporting his allegation that the DOC Defendants denied him medical care. Rather, Plaintiff admits that he was provided accommodations, such as a walking cane, soft cervical neck collar, and an abdominal binder. (Doc. No. 22 at 7.) Moreover, Plaintiff was permitted to wear a winter coat, hat, and gloves and could go to areas in the facility, such as the laundry room, to keep warm. (*Id.* at 4.) Accordingly, the Court will grant Defendants' motions to dismiss with respect to Plaintiff's Eighth Amendment claims concerning medical care.

## IV. LEAVE TO AMEND

The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State*

*Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). "A district court has 'substantial leeway in deciding whether to grant leave to amend.'" *In re Avandia Mktg., Sales Practices & Products Liab. Litig.*, 564 F. App'x 672 (3d Cir. 2014) (quoting *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000)). Based on the foregoing, and in light of the fact that Plaintiff has now been provided two (2) opportunities to amend, the Court concludes that it would be futile to allow Plaintiff to file a third amended complaint regarding his claims against Defendants.

## V.     CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motions to dismiss. (Doc. Nos. 36, 38.) Plaintiff's motion for an extension of time to file any additional pleadings (Doc. No. 53) will be denied as moot. Plaintiff will not be granted leave to file a third amended complaint. An appropriate Order follows.


SSYLVIA H. RAMBO
United States District Judge

Date: October 2, 2019